### THE TAURUS and THE KATE JONES.

(District Court, E. D. New York. December 19, 1898.)

TOWAGE—INJURY TO TOW—LIABILITY OF TUG.

   Two strong tugs, having eight barges in tow, in passing through Hell Gate,—through which pass daily all vessels to and from New York by way of the East river, and which is safely navigable, by the exercise of the usual skill and care,—permitted the tows to collide with the rocks, first on one side of the channel and then on the other, by which the tows were injured, and one of them sunk. The weather was fair, and the wind light. *Held*, that the burden rested upon the tugs to give some exculpatory reason for the occurrence, in default of which they were liable for the damage.

These were libels against the steam tugs Taurus and Kate Jones by the Boston & Amboy Railroad Company, the Standard Marine Insurance Company, and the Boston Insurance Company, respectively, to recover for injuries to barges while being towed by the tugs libeled.

Cowen, Wing, Putnam & Burlingham, for claimants.
Alexander & Green and Charles M. Hough, for Boston & A. R. Co.
Carpenter & Park, for Standard Marine Ins. Co.

THOMAS, District Judge. At about 6 o'clock in the evening of December 6, 1897, with fair weather and slight wind, the tug Kate Jones, on the port side, in charge of a licensed Hell Gate pilot, and the more powerful tug Taurus, on the starboard side, in charge of an unlicensed Hell Gate pilot, were towing, by a hawser of about 40 fathoms length, through Hell Gate, eight loaded barges, varying from 117 to 137 feet in length, arranged in two tiers of four boats each, with the Templar, the largest barge, on the starboard side of the rear tier, and the Brunette, the forward, and the Beaver, the rear, boats on the port side. As the tow rounded Hallett's Point, about which the flood tide was sweeping to the southward and eastward, the barges dropped down, under the influence of such set of the tide, until the starboard rear barge, the Templar, struck on the shore at Steep

Rocks, which are about opposite the westerly entrance to the Gate. Through this Gate pass daily all vessels going to or from the city of New York by the East river. Its navigation, although not free from difficulty, is achieved commonly without harm. All sets or peculiarities of the tide are known to fit navigators. All objects within or bordering on the channel are familiar, and usual skill and care effect a safe passage. As has been stated, in passing through this Gate the tow sagged so far below its proper course that the starboard barge struck Steep Rocks, but thereafter the tugs carried the tow so near the opposite bank that the Brunette struck; and very shortly thereafter the Beaver struck, was wrecked, left, and sank in the shoal water opposite Sunken Meadow, some 6,000 feet to the eastward of Steep Rocks. Meanwhile those in charge of the tugs proceeded for some distance upon their way, unconscious of passing or past events.

When the captain of a tug permits his tow to collide with the rocks bordering the shore, now on one side, now upon the other, in a locality familiar to navigators, the burden rests upon the towing party to give some exculpatory reason for the occurrence. The Webb, 14 Wall. 414; The Sarah J. Weed, 40 Fed. 844, 846. The answer, under the misapprehension caused by the erroneous date of the accident stated in the libel, alleged that the injury was attributable to some aberration of the tide. In truth, the tidal phenomena accorded with usual expectation; and now the claimant traces the collision to the alleged fact, that those in charge of the Templar ported around Hallett's Point, whereby seven other barges and two powerful tugs, under full headway, were dragged from their proper and safe course, so as to allow the Templar to strike on Steep Rocks, and it is urged that the injuries to the Brunette and Beaver were due to the Templar and Breeze putting their wheels over, and continuing this too long, giving the tow a contrary sheer to the northward. It is not satisfactorily shown that the acts charged did have or could have the attributed influence on the tow. The evidence is more convincing that the tugs did not pursue the well-known course from Hallett's Point to Negro Point, but dropped so far to the eastward that the tow was swept by the strong current down upon Steep Rocks, from which it was delivered after injury, and that the endeavor to extricate the tow from the danger brought the tugs dangerously near to the opposite shore, whereby the Brunette and Beaver were grounded. But the burden rests upon the claimant to give reasons for the event, and the one offered is not sufficient, and hence is rejected. The Harter act, invoked by the claimant, seems unusually inapplicable. The decree should be for the libelants, with costs.